UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Twin City Pipe Trades Service  
Association, Inc., a Minnesota  
non-profit corporation,

Civil No. 12-1417 (PAM/JJG)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

S&S Thermo Dynamics, Inc,  
Mankato Plumbing & Heating, Inc.,  
and Shawn Wenner, d/b/a Mr. Rooter  
of South Central Minnesota,

Defendants.

---

This matter is before the Court on Defendants' Motions for Summary Judgment. For the reasons that follow, Defendant Shawn Wenner's Motion is denied, Defendant Mankato Plumbing & Heating, Inc.'s Motion is granted, and Defendant S&S Thermo Dynamics, Inc,'s Motion is denied.

**BACKGROUND**

Plaintiff Twin City Pipe Trades Service Association, Inc. is a trustee responsible for collecting fringe benefit contributions due under collective bargaining agreements between local unions participating in the Twin City Pipe Trades fringe benefit fund, including Plumbers and Pipefitters Unions, Local No. 34, and various employers, including Defendants Mankato Heating & Plumbing, Inc. and S&S Thermo Dynamics, Inc.

Plaintiff brought this action alleging that Defendants S&S Thermo Dynamics, Inc, Mankato Plumbing & Heating, Inc., and/or Shawn Wenner, d/b/a Mr. Rooter of South Central Minnesota, failed to pay fringe benefit contributions to Plaintiff's beneficiaries in violation of ERISA. The claimed contributions arise from work performed by Mr. Rooter from February 2010 onward. There is no dispute that Mr. Rooter has not made the required contributions. The question is who is responsible for those contributions.[1]

In 2004, Defendant Shawn Wenner and his wife, Sara, purchased Mankato Heating and Plumbing (MPH). The Wenners were MPH's sole shareholders. MPH was party to a collective bargaining agreement with Local Unions 34 and 455 and made fringe benefit contributions for work performed through MPH, including work performed by the Mr. Rooter franchise.

In 2006, the Wenners purchased a Mr. Rooter franchise. They signed the franchise agreement in their individual capacities and are listed as the designated franchisees. (Henderson Aff. Ex. H (Docket No. 52-2) at 34 (Franchise Agreement).) Wenner now claims that MPH owned the Mr. Rooter franchise from the outset, but the record does not support his claim. There are no documents showing that MPH owned the franchise at any time. MPH is mentioned in the franchise agreement, but only as a "Competitive Business,"

---

[1] Defendants suggest that Mr. Rooter may never have had any obligation under the CBA, but they do so without conviction or any factual or legal support. (See, e.g., S&S and MPH Supp. Mem. at 5 (Docket No. 46).) Indeed, Mr. Rooter's course of conduct compels a different conclusion. The Court therefore will assume that Mr. Rooter was bound by the CBA and is presently in arrears.

i.e., a business that competes with the type of business offered by Mr. Rooter and is exempt from the franchise agreement's non-competition clause. (Id. ¶ 9C; Ex. A.) Nor are there any subsequent documents evincing a transfer of interest from the Wenners to MPH. Wenner seems to believe that MPH owned the franchise simply because he intended that to be the case.

The record nevertheless establishes that the Wenners operated Mr. Rooter using MPH's facility, employees, and equipment. (See Wenner Dep. (Docket No. 44-1) at 19, 67.) MPH also made fringe benefit contributions on behalf of Mr. Rooter prior to February 1, 2010. (Id. at 107-09.) Mr. Wenner has acknowledged that the CBA covered work performed by Mr. Rooter employees. (Henderson Aff. Ex. C at 3 (Def. Shawn Wenner's Answers to Pl.'s First Set of Discovery, No. 6).)

In 2010, the Wenners reorganized their business. At the end of January 2010, MPH ceased operations. On February 1, 2010, the Wenners formed S&S Thermo Dynamics, Inc. (Wenner Dep. at 27-28.) The Wenners are S&S's sole shareholders. (Henderson Aff. Ex. D at 2 (S&S Written Action of Shareholders).) Shawn Wenner is its president and one of its two directors. (Id.) S&S purchased certain unspecified MPH's assets through an Asset Purchase and Sale Agreement.[2] (Alton Aff. (Docket No. 44) Ex. 5 at 9-11 (S&S Asset Purchase and Sale Agreement).)

---

[2] The Schedules provided to the Court that purport to list the transferred assets are blank.

On February 1, 2010, the Wenners also formed Wenner Quality Services. They are WQS's sole shareholders. (Wenner Dep. at 41, 43.) Sara Wenner is WQS's president and sole director. (Id. at 41.) Like S&S, WQS also purchased certain unspecified MPH assets. (Alton Aff. Ex. 6 (WQS Asset Purchase and Sale Agreement) at 9-11.) The Asset Purchase and Sale Agreement between WQS and MPH also states that WQS purchased "[a]ll rights, if any, in and to that certain Franchise Agreement dated November 21, 2006." (Id. ¶ 1.5.) However, as noted, there is no documentation supporting the claim that MPH ever owned any portion of the Mr. Rooter franchise. Thus, WQS acquired no interest in the franchise. There appears to be no dispute, however, that WQS currently operates Mr. Rooter using its facility, equipment, and employees.

Mr. Wenner testified that S&S purchased certain Mr. Rooter equipment from MPH and that WQS subsequently acquired that equipment from S&S through some sort of a loan in the amount of $65,000. (Wenner Dep. at 44-45, 48-50.) Mr. Wenner also contends that WQS purchased Mr. Rooter vehicles and the franchise itself directly from MPH, but, again, there is no documentation in the record to support this contention. (Wenner Dep. at 53; see WQS Asset Purchase and Sale Agreement at 9-11.) Mr. Wenner does not even recall whether WQS paid anything to MPH for the Mr. Rooter business or vehicles. (Id. at 54.)

The Court notes that Mr. Wenner disclosed WQS's existence to Plaintiff only after the October 1, 2012, deadline to amend the pleadings had passed. (Docket Nos. 15, 17, 38.) Further, although Mr. Wenner contends that WQS has operated the Mr. Rooter business since WQS's formation on February 1, 2010, the Wenners did not amend Mr. Rooter's business

4

filings to reflect WQS's affiliation with Mr. Rooter until October 10, 2012, which was also after the Scheduling Order deadline.[3] (Henderson Aff. Ex. N at 2.) Mr. Wenner's failure to timely disclose WQS, whether by oversight or design, troubles the Court, especially because he now points to WQS as the party responsible for Mr. Rooter's obligations to Plaintiff.

On January 29, 2010, Mr. Wenner sent a letter to the unions on behalf of S&S stating that MPH was selling its assets to S&S and ceasing operations. (Wenner Aff. Ex. F (Docket No. 48-1).) The letter further states that S&S will assume MPH's responsibilities under the CBA, which implicitly included the obligation to pay contributions for Mr. Rooter work. (Id.)

The same day, Mr. Wenner also sent a letter to the unions on behalf of Mr. Rooter stating that it was repudiating any contract with the unions.[4] (Id. Ex. G.) The letter closes by stating: "Please also understand that Mr. Rooter is in the process of selling its assets, and expects to discontinue operations as a going concern on January 31, 2010." (Id.) This statement was false. Mr. Rooter never ceased operations and is still operating today. Moreover, there is no indication in the record that the Wenners ever intended to discontinue Mr. Rooter's operations. Just two days after he sent the letter to the unions, Mr. Wenner

---

[3] Unfortunately, Plaintiff did not seek to amend the Scheduling Order in order to join WQS until March 2013, months after Plaintiff learned of WQS and its relationship to Mr. Rooter. (Docket No. 38.) Magistrate Judge Graham denied Plaintiff's request. (Docket No. 40.)

[4] The letter also indicates that Mr. Rooter had attempted to repudiate the CBA in 2009, but there is no additional reference in the record to this alleged repudiation. (Wenner Aff. Ex. G.)

announced to employees that "All residential plumbing service will be performed by Mr. Rooter Plumbing. Mr. Rooter Plumbing will not have any direct business ties, nor will it be a division or branch of [S&S]. It will be completely autonomous[.]" (Id. ¶ 9, Ex. D.) Mr. Wenner now claims that Mr. Rooter is not autonomous, but rather owned by WQS.

Having received no contributions from Mr. Rooter from February 2010 forward, Plaintiff, as trustee for the local unions, sued Defendants for the unpaid contributions as follows: Count 1 alleges that S&S wholly owns and controls Mr. Rooter and is therefore responsible for the contributions, Count 2 alleges that S&S is liable as the successor to MPH, Count 3 alternatively alleges that MPH is directly liable, Count 4 alleges that Shawn Wenner, d/b/a Mr. Rooter is liable as a sole proprietor, Count 5 seeks injunctive relief against S&S, Count VI alternatively alleges injunctive relief against MPH, and Count VII alternatively alleges injunctive relief against Wenner. Plaintiff appears to have sued all entities and Shawn Wenner because it is not clear who is ultimately responsible for the fringe benefits contributions.

Shawn Wenner has moved for summary judgment contending that he cannot be held personally liable for Mr. Rooter's failure to pay contributions. S&S and MPH have separately moved for summary judgment on the grounds that they, too, are not responsible for the unpaid fringe benefit contributions.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**A.    Shawn Wenner Liability**

The first issue presented is whether Shawn Wenner can be deemed an "employer" vis-a-vis Mr. Rooter. Under ERISA,

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

7

29 U.S.C. §§ 1132(g), 1145. "Employer" is defined as "any person acting directly or indirectly as an employer or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). In turn, the term "person" is defined as an "individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 9 U.S.C. § 1002(9).

Mr. Wenner first contends that he cannot be held personally liable for past-due fringe benefit contributions because he does not own Mr. Rooter, and therefore is not an "employer." The record belies this contention. The franchise agreement names Shawn and Sara Wenner, individually, as the Mr. Rooter franchisees. (Franchise Agreement at 34.) All franchise reports likewise reference Shawn and Sara Wenner as the franchisees. (See Henderson Aff. Ex. L.) There are no documents in the record evincing any transfer of franchisee rights from the Wenners to any other person or entity. In defense of this argument, Mr. Wenner states that he "believed" that MPH owned the Mr. Rooter franchise. (See, e.g., Wenner's Reply Mem. at 4.) His subjective belief does not overcome the objective evidence to the contrary.

Mr. Wenner also contends that WQS owns the Mr. Rooter franchise because the Asset Purchase Agreement between MPH and WQS indicates that MPH transferred its interest in the Mr. Rooter business to WQS. The problem with this argument is that there is no evidence that MPH ever held any ownership interest in Mr. Rooter. It is self-evident that

8

MPH could not convey what it did not have. Indeed, the Asset Purchase Agreement accounts for this possibility by conveying "[a]ll rights, if any, in and to that certain Franchise Agreement dated November 21, 2006." (WQS Asset Purchase Agreement ¶ 1.5 (emphasis added).) MPH did not convey any rights in and to the franchise agreement to WQS because it did not have any.

Mr. Wenner next argues that if WQS does not own the Mr. Rooter franchise, then he escapes liability because ERISA does not define "person" to include a franchise or franchisee. (Wenner's Reply Mem. at 6.) This argument is absurd. Regardless of whether "person" is defined to specifically include a franchise, it does include "individual[s]." 29 U.S.C. § 1002(9). Mr. Wenner cannot deny that he falls within the definition of that term.

Finally, Mr. Wenner argues that he cannot be held personally liable as a franchisee because Mr. Rooter did not sign the CBA. He acknowledges, however, that MPH made contributions on behalf of Mr. Rooter because the work was subject to the CBA. He tries to wiggle out of this continuing obligation by arguing that when MPH ceased operations, Mr. Rooter was no longer obligated to make contributions. But Mr. Wenner cannot avoid the obligation by simply declaring it to be void. The work covered by the CBA is ongoing and Mr. Rooter's contribution obligations did not expire just because the Wenners decided to reorganize their business.

The bottom line is that Mr. Wenner agreed to make contributions based on work performed by Mr. Rooter employees. The fact that he made such contributions through a now-defunct entity does not allow him to escape liability. Mr. Wenner's Motion is denied.

**B.     S&S and MPH Liability**

S&S and MPH also move for summary judgment, arguing that they do not operate Mr. Rooter and therefore are not responsible for making the fringe benefit contributions. In making this argument, S&S and MPH single out non-party WQS as the responsible entity. Plaintiff argues that S&S and MPH are liable because they, along with Mr. Wenner and WQS, are interrelated and therefore collectively liable for Mr. Rooter's contribution obligations.[5]

"In general, only a party to a collective bargaining agreement is bound by its terms; however, in some instances, an employer which has not signed a labor contract may be so closely tied to a signatory employer as to bind them both to the agreement." Crest Tankers, Inc. v. Nat'l Mar. Union of Am., 796 F.2d 234, 237 (8th Cir. 1986). The Eighth Circuit has adopted different theories for demonstrating this "high degree of consanguinity," the most relevant of which is the "alter ego doctrine." Id.

For purposes of ERISA, alter ego liability exists when a corporation is "(1) controlled by another to the extent that it has independent existence in form only and (2) is used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud." Brady v. Borchart Indus., Inc., No. 05-1386, 2006 WL 3043138, *4 (D. Minn. Oct. 25, 2006) (Montgomery, J.) (quoting Greater Kansas City Laborers Pension Fund v. Superior Gen.

---

[5] It is undisputed that MPH is no longer doing business and there is no claim that MPH failed to make contributions prior to going out of business. Accordingly, the Court grants summary judgment to MPH.

Contractors, 104 F.3d 1050, 1055 (8th Cir. 1997)). In this context, the Court considers whether "the employers acted out of anti-union sentiment to avoid a labor contract." Crest Tankers, 796, F.2d at 237. "The essence of the [alter ego] test is whether, under all the circumstances, the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside." In re B.J. McAdams, Inc., 66 F.3d 931, 937 (8th Cir. 1995) (brackets in original) (quoting Pepper v. Litton, 308 U.S. 295, 307 (1939)).

The relevant inquiry is whether S&S, as the successor signatory to the CBA, and WQS, as Mr. Rooter's operator, are alter egos of one another. If they are, then S&S may be held responsible for the past-due contributions. The Wenners attempt to avoid such a finding by maintaining corporate formalities. For example, Sara and Shawn Wenner separately incorporated, operated, and managed WQS and S&S; WQS and S&S are located in separate (albeit neighboring) buildings; S&S's corporate governance documents prohibit Sara Wenner from taking any role in S&S's operations[6]; and the companies keep separate corporate records. The Wenners also point to the fact that WQS and S&S do not share employees and compete in different markets. Although these facts are undisputed, they do not end the inquiry.

As Plaintiff notes, the asset transfers among MPH, S&S, and WQS lack the formality the Wenners were so careful to establish in other respects. For example, the Asset Purchase Agreements between MPH and S&S and MPH and WQS do not provide any indication of

---

[6] This is an odd formality that appears to have no purpose other than to undermine possible alter ego liability.

the assets acquired by S&S and WQS. Mr. Wenner testified that S&S purchased certain Mr. Rooter equipment from MPH and that WQS subsequently acquired that equipment from S&S, but he has provided no documentation evidencing those transactions. Mr. Wenner's recollection of what happened is murky at best. He cannot even recall whether WQS paid anything to MPH for the Mr. Rooter business or its vehicles. Further, at the time of reorganization, Mr. Wenner valued MPH based on the amount of money MPH owed to the bank, rather than market value of the business. (Wenner Dep. at 86-87; Henderson Aff. Ex. E.)

Perhaps the best evidence of Defendants' "high degree of consanguinity" is the fact that the Wenners never transferred the franchise agreement to MPH or WQS. Mr. Wenner apparently intended to do so, but the transfer never happened. Instead, the Wenners informally operated Mr. Rooter through MPH, and later through WQS. In other words, the Wenners treated their franchise and their entities interchangeably as it suited them. These facts indicate that the dealings among the Wenners and their entities were anything but arms-length. Accordingly, the Court finds that the Wenner entities are interrelated for purposes of establishing alter ego liability.

Moreover, the record amply supports a finding that the Wenners re-structured their business in order to avoid Mr. Rooter's obligations under the CBA. S&S undertook MPH's CBA obligations, which included the payment of contributions relating to Mr. Rooter work, without undertaking any of Mr. Rooter's operations. At the same time, WQS took over Mr. Rooter's operations without also assuming Mr. Rooter's responsibilities vis-a-vis the unions.

Consequently, in theory, S&S would not owe contributions for Mr. Rooter work because it had no relationship with Mr. Rooter, and WQS would have no obligation to pay Mr. Rooter contributions because it did not have a relationship with the unions. This is nothing more than a corporate game of "not it."

Mr. Wenner then falsely notified the unions that Mr. Rooter was going out of business and therefore repudiating the CBA. Mr. Wenner has not even attempted to provide a legitimate explanation for this letter. Defendants contend that Mr. Wenner "quickly alleviated this purportedly erroneous statement" three days later when he announced to employees that Mr. Rooter would continue on as an independent business. (S&S and MPH Reply Mem. at 6.) Notably, however, Mr. Wenner never updated the unions to let them know that Mr. Rooter would remain in business. Further, as noted, Defendants did not disclose WQS or its relationship with Mr. Rooter until late in the litigation. These undisputed facts establish that Defendants hid Mr. Rooter's ongoing operations from the unions in an attempt to avoid making contributions under the CBA.

The Court further notes that S&S can be held liable for the simple reason that it expressly assumed MPH's contribution obligations under the CBA, which included contributions relating to Mr. Rooter work. Defendants cite to no authority indicating that S&S's assumption of the CBA is not binding in every respect, particularly given the identity of ownership between MPH, S&S, and Mr. Rooter. S&S's motion is denied.

**CONCLUSION**

The Court denies Mr. Wenner's and S&S's Motions for Summary Judgment because the record supports a finding that they are jointly and severally liable for unpaid contributions on behalf of Mr. Rooter. The Court will address the issue of damages when fully presented by the parties. Based on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Shawn Wenner's Motion for Summary Judgment (Docket No. 35) is **DENIED**;

2. Mankato Plumbing & Heating, Inc.'s and S&S Thermo Dynamics, Inc.'s Motion for Summary Judgment (Docket No. 41) is **GRANTED in part and DENIED in part** as set forth above; and

3. Defendant Mankato Heating and Plumbing, Inc. is **DISMISSED** as a party to this action.

Dated: August 2, 2013

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge